NOT FOR PUBLICATION                                    CASE CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                              :
DAYS INN WORLDWIDE, INC.,                     :
                                              :
            Plaintiff,                        :
                                              :
    v.                                        :        Civil Action No. 02-02143 (SDW)
                                              :
BFC MANAGEMENT, INC., a West                  :
Virginia Corporation; JAMES COBB,             :             **OPINION**
an individual; and ROBERT FRAZIER,            :
an individual,                                :
                                              :        March 4, 2008
                                              :
            Defendants.                       :
_____:

**WIGENTON**, District Judge

Before the Court are briefs filed by plaintiff Days Inn Worldwide, Inc. ("Plaintiff"), co-defendants BFC Management, Inc. ("BFC") and Robert Frazier ("Frazier") (collectively "Co-defendants") and cross-claimant James Cobb ("Cobb") regarding the final issues in this matter, namely, Plaintiff's claims for Lanham Act and liquidated damages from BFC, as well as Cobb's cross-claim ("Cross-Claim") for indemnification from Co-defendants and attorneys' fees from Frazier. Based on the parties' discussions and understandings with the Court during oral argument on August 9, 2007, the Court will decide these remaining issues as if raised by motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[1]

The Court, having considered the parties' submissions, decides this matter without further

_____

[1] Per the Court's and the parties' understanding, these remaining issues do not involve genuine issues of material fact. Thus, summary judgment is appropriate in this matter.

1

oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court grants summary judgment to Plaintiff, and grants in part and denies in part summary judgment for Cobb.

## I.     Jurisdiction

The Court is vested with jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

## II.    Background

The parties are referred to the Amended Final Pretrial Order filed by Judge Arleo on July 13, 2007 for the underlying facts giving rise to Plaintiff's Lanham Act claims against Co-defendants and Cobb.[2]  On July 24, 2007, Cobb settled all claims with Plaintiff in the amount of $150,000 pursuant to a settlement agreement ("Settlement Agreement") executed between them.  Cobb subsequently filed a cross-claim for indemnification and contribution against Co-defendants.  Cobb asserts that pursuant to the Stock Purchase Agreement ("SPA") dated December 1998, Cobb transferred all of his interest in BFC to Frazier in consideration for indemnification from Frazier for "any and all debts, liabilities, claims and obligations of the Corporation now existing or which may hereafter arise." (SPA ¶ 2.)  Accordingly, Cobb claims that he is entitled to indemnification and contribution from Co-defendants for his settlement with Plaintiff, as well as attorneys' fees incurred in litigating this matter.  (Cobb's Reply Br. at 1.)

---

[2] On or about April 12, 1996, Frazier and Cobb provided Plaintiff with a Guaranty of BFC's obligations under the License Agreement.  Thus, Cobb is named an original defendant in this matter.  (Am. Final Pretrial Order ¶¶ 8, 14.)

## III.    Legal Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party and material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmoving party who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter, but rather, determine whether genuine issues of material fact exist. *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*,  501 U.S. 496, 520 (1991).

## IV.    Discussion

As noted, the Court and the parties agree that no genuine issues of fact exist with regard to the remaining issues in this matter.  (*See generally* Tr., Aug. 9, 2007.)  Thus, it is appropriate for the Court to address the following issues on summary judgment: 1) BFC's alleged violations of the

3

Lanham Act and Plaintiff's claim to Lanham Act damages; 2) the validity of the liquidated damages stipulation between Plaintiff and BFC under the License Agreement; and, 3) Cobb's claim of indemnification and contribution from Co-defendants for his settlement with Plaintiff, as well as attorneys' fees.

A.    *Lanham Act Violations*

Plaintiff alleges that BFC infringed on the Days Inn trademarks and service marks (the "Days Marks") from November 6, 2001 through at least January 22, 2002 in violation of sections 32[3] and 43[4] of the Lanham Act ("Act").  (Pl.'s Letter, Aug. 23, 2007.)

To prevail on a trademark infringement claim under section 32,[5] a plaintiff must prove that the marks in question are valid and legally protectable, owned by plaintiff, and that defendant's use of them is likely to create confusion concerning the origin of the product or service.  *General Motors Corp., Chevrolet Motor Div. v. New A.C. Chevrolet, Inc.*, 91 F. Supp. 2d 733, 741 (D.N.J. 2000) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).  With regard to an unfair competition claim under section 43,[6] a plaintiff need only prove that its marks are distinctive and protectable and that the defendant's use of those marks would likely cause confusion among the relevant public.  *See id.* at 742 (citing *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114,

---

[3] 15 U.S.C. § 1114.

[4] 15 U.S.C. § 1125.

[5] Section 32 prohibits the unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(a)(1).

[6] Section 43(a) creates a cause of action for the false designation of the origin of goods or services and false or misleading descriptions of fact, which are likely to cause confusion.  *See* 15 U.S.C. § 1125(a)(1)(A).

1134 (D.N.J. 1993)).  Because "'trademark infringement [under section 32] is a narrower concept, any finding that it has occurred will, by necessity, support an additional finding that the defendant is also guilty of unfair competition [under section 43(a)].'"  *Id.* (citation omitted).

It is undisputed that the Days Marks are valid, legally protectable and owned by Plaintiff. (*See* Am. Final Pretrial Order ¶¶.)  Therefore, the Court need only decide whether BFC's use of the Days Marks is likely to create confusion concerning the origin of the product or service.

The Third Circuit has held that great likelihood of confusion exists when unrelated entities use the exact same trademark simultaneously.  *U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981); *Opticians*, 920 F.2d at 195 ("[L]ikelihood of confusion is inevitable, when . . . the identical mark is used concurrently by unrelated entities."); *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 376 (3d Cir. 1992) ("[C]oncurrent use is highly likely to cause consumer confusion . . . .").

In this matter, a Post-Termination Obligations Checklist and accompanying photographs, which were taken on January 22, 2002 by a representative of Plaintiff, show that BFC continued to use the Days Marks after the termination of the License Agreement on November 6, 2001.  (*See* Olsen's Decl. Ex. A.)  As such, the Court finds that BFC's unauthorized use of the Days Marks from November 6, 2001 through at least January 22, 2002 likely created confusion to the public.[7] Therefore, the Court grants Plaintiff summary judgment on its claims under sections 32 and 43 of

---

[7] Relying on *Checkpoint Systems Inc. v. Checkpoint Software Technologies, Inc.*, 104 F. Supp. 2d 427 (D.N.J. 2000), BFC argues that because Plaintiff has not shown that BFC acted in bad faith, Plaintiff has not established the requirement of a likelihood of confusion.  (*See* Defs.' Supplemental Br. at 5.)  The Court is unpersuaded by this argument.  As the *Checkpoint Systems* court noted: "A finding of intentional infringement is, like evidence of actual confusion, not necessary for a finding of likelihood of confusion, and good faith is not a defense to a charge of trademark infringement."  104 F. Supp. 2d at 465.

the Lanham Act.

B.    *Lanham Act Damages*

Plaintiff seeks the following damages with respect to its Lanham Act claims: (1) damages from Co-defendants[8] based on the profits earned at the infringing facility ("Facility")[9] during the period of infringement, or, alternatively, compensatory damages based upon the recurring fees that Plaintiff would have received during that period; (2) treble damages due to Co-defendants' alleged intentional and deliberate use of the Days Marks after termination; and, (3) attorneys' fees. (Pl.'s Letter dated Aug. 23, 2007.)

Plaintiff calculates its actual damages to be $16,579.92, which is the gross room revenue during the period of infringement, and requests the Court to treble the infringement damages to $49,739.76. In assessing damages, the Court may award three times the amount of actual damages, including attorneys' fees, where it finds intentional infringement. *See* 15 U.S.C. § 1117(b); *see also Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1329-41 (D.N.J. 1994) (holding that treble damages are only to be imposed if the defendant's infringement was intentional, knowing, or willfully blind). Despite the termination of the License Agreement on November 6, 2001, BFC continued to provide in the Facility cups, toiletries, and other items displaying the Days Marks. (*See* Olsen's Decl. Ex. A.) Moreover, BFC continued to operate with exterior signage displaying the Days Marks through at least January 22, 2002. (*See* Olsen's Decl. Ex. A.) As such, the Court finds that BFC possessed the requisite intent so as to entitle Plaintiff to treble damages in the amount of

---

[8] Frazier (and Cobb) are personally liable upon default by BFC under the License Agreement. (*See* Guaranty.)

[9] The Facility is a 102-room Days Inn guest lodging facility located in Mt. Nebo, West Virginia. (Pl. Opp'n at 1.)

$49,739.76, including reasonable attorneys' fees,  pursuant to 15 U.S.C. § 1117(b).

      C.    *Liquidated Damages*

In addition to infringement damages, Plaintiff seeks liquidated damages in the amount of $204,000 pursuant to section 12.1 of the License Agreement.[10]  According to Co-defendants, "A large discrepancy exists between the amount sought by [Plaintiff] pursuant to the liquidated damage[s] clause and the actual damages alleged by [Plaintiff]."  (Defs.' Supplemental Br. at 3.)  Given this alleged discrepancy, Co-defendants contend that the liquidated damages clause is unreasonable and unenforceble.

Whether a liquidated damages clause is enforceable is a question of law for the court and "[t]he burden of proof is upon the party challenging the liquidated damages clause."  *Naporano Assocs., L.P. v. B & P Builders*, 309 N.J. Super. 166, 175 (App. Div. 1998).  Under New Jersey law, "'reasonableness' emerges as the standard for deciding the validity of stipulated damages clauses."  *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 249 (N.J. 1994).  "[T]he difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause."  *Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484, 495 (1999) (citing *Wasserman's*, 137 N.J. at 250-54).  "In short, [t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances . . . ."  *Id.* at 494 (internal quotations omitted).

The Court is satisfied that the parties are of comparable bargaining power.  The Court is also

---

[10] The liquidated damages clause in section 12.1 of the License Agreement provides for "an amount equal to the sum of accrued Royalties and Basic Reservation Charges during the immediately preceding 24 full calendar months . . . Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms [i.e. 102] in the Facility."

satisfied that the parties intended for Plaintiff to receive at a minimum $204,000 in the event that Co-defendants breach the franchise agreement because section 12.1 of the License Agreement explicitly provides that "[l]iquidated [d]amages will not be less than the product of $2,000 multiplied by the number of guest rooms in the Facility."

Further, the Court agrees that actual damages are very difficult to assess.  As Plaintiff explains:

> The amount [Plaintiff] would have earned under the License Agreement, in the absence of [Co-defendants'] breach, depends upon a percentage of monthly gross room revenues that would have been earned at the Facility.  Given the nature of the transient lodging business, gross room revenues can drastically fluctuate from month to month depending upon factors such as the national, regional, and local economy, the travel patterns of vacationers, the entry or withdrawal of competitors from the market, and the effort, skill and resources of the licensee.

(Pl.'s Opp'n at 3-4.)  Finally, the Court agrees with Plaintiff that the liquidated damages sought are reasonable in light of the actual damages sustained.  As Plaintiff explains, the formula "represents a compromise between the three years typically required to bring a new construction replacement into the chain, and the eighteen months required to build up the revenue stream of a conversion replacement that could hypothetically be in place immediately after termination."  (Pl.'s Opp'n at 4-5.)  Given the totality of these circumstances, the Court therefore finds that the liquidated damages clause in section 12.1 of the License Agreement is reasonable and enforceable. Accordingly, the Court grants Plaintiff liquidated damages in the amount of $204,000.

###### D.    Cross-Claim for Indemnification and Contribution

Cobb seeks indemnification and contribution from Frazier in the amount of $150,000 (i.e., the settlement amount between Cobb and Plaintiff), as well as attorneys' fees "incurred in litigating

this matter pursuant to the hold harmless provision of the SPA." (Cobb's Reply Br. at 1.) Frazier asserts that because Cobb never physically transferred the stock certificates to him, the SPA is ineffective, therefore excusing Frazier from holding Cobb harmless pursuant to the SPA. (*See* Defs.' Supplemental Br. at 7.) Frazier further contends that the hold harmless provision of the SPA does not encompass the damages being sought by Cobb, namely the $150,000 settlement with Plaintiff and attorneys' fees. (Defs.' Supplemental Br. at 7, 9, 11.)

Despite Cobb's failure to physically transfer the stock certificates to Co-defendants, the Court finds that the SPA is nonetheless valid. *See Abraham v. Twp. of Teaneck Ethics Bd.*, 349 N.J. 374, 380 (App. Div. 2002) (holding that the physical possession of stock certificates are "only evidence of shareholder status; their physical possession is not a prerequisite to the formation of the relationship or ownership in the company"). Next, the Court must decide whether the hold harmless provision of the SPA encompasses Cobb's $150,000 settlement with Plaintiff. For the reasons below, the Court holds that the SPA does encompass Cobb's $150,000 settlement with Plaintiff, but does not include attorneys' fees.

Indemnity provisions are interpreted in accordance with the rules governing the construction of contracts generally, which strive to ascertain the intention of the parties in light of the language used, the surrounding circumstances and the objects sought to be attained under the agreement. *Bethlehem Steel Corp. v. K.L.O. Welding Erectors, Inc.*, 132 N.J. Super. 496, 499 (App. Div. 1975). As such, "a court is 'not at liberty to make a better contract for a party than that which he has voluntarily entered into or alter it for his benefit to the detriment of the other party.'" *Dai v. Cmty. Med. Ctr.*, 295 N.J. Super. 206, 210 (App. Div. 1996). "Where a contract provides that in the event of its breach the aggrieved party may recover as part of his damages the reasonable attorney's

expense incurred in enforcing his rights under the contract, that stipulation will be enforced by the courts." *Johnson v. Johnson*, 92 N.J. Super. 457, 463 (App. Div. 1966).  Such provisions for the award of attorneys' fees, however, will be strictly construed against the indemnitee.  *See Dare v. Freefall Adventures, Inc.*, 349 N.J. Super. 205, 222 (App. Div. 2002).

   The hold harmless clause of the SPA provides: "Frazier agrees that, in consideration of Cobb's sale, transfer and assignment of all of Cobb's Corporate Stock to him, [Frazier] will save Cobb harmless from any and all debts, liabilities, claims and obligations of the Corporation now existing or which may hereafter arise."  (SPA ¶ 2.)  The Court is satisfied that Cobb's settlement with Plaintiff, in light of the Court's finding of BFC's liability,  falls within the purview of "*any and all* debts, liabilities, claims and obligations *of the Corporation*" (SPA ¶ 2) (emphasis added). Therefore, the Court holds that Cobb is entitled to indemnification and contribution from Frazier in the amount of $150,000.

   With regard to Cobb's claim for attorneys' fees, the Court does not find that the language of the SPA can be said to provide for such indemnification.  Although the hold harmless provision of the SPA provides for indemnification for "any and all debts, liabilities, claims and obligations of the Corporation," it does not explicitly state that attorneys' fees are included in such indemnification. (SPA ¶ 2.) Even assuming  *arguendo* that attorneys' fees are included in the hold harmless provision, it is unclear whether attorneys' fees incurred by Cobb's enforcement of the indemnity agreement constitute a debt, liability, claim or obligation "of the Corporation."  (SPA ¶ 2.) Without clearer, more explicit language, the Court cannot construe the hold harmless provision of the SPA to include attorneys' fees, whether for the underlying matter or for the enforcement of

the indemnity and contribution agreement itself.[11]  *See McAdam v. Dean Witter Reynolds, Inc.*, 896

F.2d 750, 775 (3d Cir. 1990) (stating that "attorneys' fees are not recoverable absent express

authorization by statute, court rule or contract"); *Johnson*, 92 N.J. Super. at 463 (holding that

indemnification of attorneys' fees from "the prosecution of a suit upon the indemnity agreement

itself" cannot be inferred where "[t]he parties could readily have provided therefor, but did not.").

   Relying on *Riveredge Associates v. Metropolitan Life Insurance,*[12] Cobb further argues that

he is entitled to attorneys' fees because Frazier's defense to indemnifying Cobb was knowingly false,

and deprived Cobb of his "'implied contractual right' to be 'free of suit.'"  (Cobb's Reply Br. at 8-9.)

However, the Court does not find that Frazier's assertions in his defense against indemnification rise

to the level of "bad faith" with which the *Riveredge* court was confronted, and therefore, is not

compelled to award attorneys' fees in this matter.  *Cf. Riveredge*, 774 F. Supp. at 901 (finding that

a borrower's suit against a lender for refusing to allow prepayment of a loan may have been

instituted in bad faith given that the lender was under no fiduciary or contractual obligation to allow

prepayment of the loan in light of the express terms of their agreement).  Further, the Court has

discretion in awarding attorneys' fees, and is mindful that such fees are awarded in limited,

---

   [11] Cobb points to several decisions in which courts have held that attorneys' fees were encompassed by the language of hold harmless agreements.  However, those decisions are distinguishable as the hold harmless agreements at issue in those cases contained unambiguous language providing for attorneys' or legal fees.  *See, e.g., Harris v. Allstate Ins. Co.*, 540 S.E.2d 576, 579 (W. Va. 2000) ("In the event that [VWA] or [Allstate] is party to or defendant in any litigation, claim, or other action resulting from [VWA's] efforts to recover [Allstate's] claims, [VWA] agrees to defend, indemnify and hold [Allstate] harmless from and against any and all judgments, awards, liabilities, settlements, or *other costs arising from such litigation, claim, or other action*.") (emphasis added).

   [12] 774 F. Supp. 897 (D.N.J. 1991).  The court in *Riveredge* held that "a cause of action for breach of the implied covenant of good faith and fair dealing can be maintained under New Jersey based on allegations that a party has assert[ed] an interpretation [of the contract] contrary to [its] own understanding of the express terms of that contract."  *Id.* at 900.

11

exceptional circumstances. *See, e.g.*, *McAdam*, 896 F.2d at 775-76 (explaining the "American Rule" of litigants bearing their own attorneys' fees and New Jersey's repeated refusal to award attorneys' fees in the absence of a specific rule, statute or contract so providing).  Accordingly, the Court denies Cobb's request for attorneys' fees incurred in this matter.


**V.      Conclusion**

For the foregoing reasons, the Court grants Plaintiff summary judgment for infringement damages in the amount of $49,739.76, including reasonable attorneys' fees, and liquidated damages in the amount of $204,000.  The Court grants in part and denies in part summary judgment for Cobb: granting indemnification and contribution from Co-defendants in the amount of $150,000, but denying an award of attorneys' fees from Frazier.


s/ Susan D. Wigenton, U.S.D.J.

12